**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4390
_____

WAYNE LANCELOT CLARKE,
a/k/a WAYNE CLARKE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-445-084)
Immigration Judge:  Honorable Andrew R. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 20, 2014
Before:  FISHER, VANASKIE and ALDISERT, Circuit Judges

(Opinion filed: June 23, 2014 )
_____

OPINION
_____

PER CURIAM

Wayne Lancelot Clarke ("Clarke") petitions for review of the decision of the

Board of Immigration Appeals  ("Board") denying his application for deferral of removal

under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

## I.

Clarke, a native and citizen of Jamaica, entered the United States on a tourist visa in 2002. In late 2012, he received a notice to appear charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who entered the United States and remained longer than permitted, pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) as an alien convicted of controlled substance violations, and pursuant to 8 U.S.C. § 1227(a)(2)(A) as an alien convicted of an aggravated felony. During Clarke's immigration hearing, in which he participated pro se,[1] he conceded removability on all charges but sought deferral of removal under the Convention Against Torture ("CAT"). Clarke argued that, prior to leaving Jamaica, he had been a police officer and had arrested and shot several politically-connected gang members. He claimed that in both Jamaica and the United States he and members of his family had received threats from people claiming to be friends of the people he arrested and shot.

The Immigration Judge ("IJ") determined that Clarke was ineligible for asylum or withholding of removal because his prior drug conviction constituted a particularly

---

[1] The Immigration Judge informed Clarke of his right to counsel, sent Clarke a list of affordable and pro bono attorneys and legal advisors, and gave Clarke two continuances to find counsel. See Leslie v. Att'y Gen., 611 F.3d 171, 182 (3d Cir. 2010) (holding that an immigration judge's failure to "advise the respondent of the availability of free legal services and to ascertain that the respondent has received a list of such programs" invalidates a subsequently entered removal order) (internal quotation marks omitted).

serious crime. See 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). The IJ then reviewed Clarke's evidence of political corruption, including the influence of gangs on public officials, but found that the Jamaican government has made progress in rooting out police corruption. The IJ additionally found that Clarke had received protection from a fellow police officer while he still resided in Jamaica, and that he might receive protection should he return to Jamaica. The IJ concluded that Clarke failed to show that it was more likely than not that he would be subject to torture by or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity if he were to be returned to Jamaica. Accordingly, the IJ ordered Clarke's removal to Jamaica.

Clarke appealed the IJ's CAT determination to the Board of Immigration Appeals ("the Board"), and also argued that the IJ had violated his due process rights by interrogating him with over 250 questions, some of which interrupted his testimony.[2] The Board determined that the IJ had a duty to develop the record by asking Clarke a number of questions, especially in light of the fact that Clarke was not represented by counsel. The Board also found that the Jamaican government was seeking to protect retired officers by, among other things, deploying additional security when necessary. The Board then concluded that Clarke had neither suffered a due process violation nor demonstrated a clear probability of torture by or at the instigation of, or with the consent

---

[2] Clarke did not contest the IJ's determination that he had been convicted of an aggravated felony and particularly serious crime.

or acquiescence of, the Jamaican government. On those grounds, the Board dismissed Clarke's appeal.

Clarke petitions for review.

## II.

We have jurisdiction under 8 U.S.C. § 1252 and review only the Board's disposition except to the extent that the Board's order defers to the IJ's ruling. See Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). In a case where the petitioner's removal order is based on a conviction for a controlled substance offense or aggravated felony, our jurisdiction is limited to the review of constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C)-(D); Green v. Att'y Gen., 694 F.3d 503, 506 (3d Cir. 2012).

Clarke has conceded that he was convicted of a controlled substance offense and aggravated felony, but argues that the IJ violated his due process rights by interrupting his testimony with more than 250 questions. This is a constitutional claim over which we have jurisdiction. See 8 U.S.C. § 1252(a)(2)(D). To establish a due process violation, Clarke "must show that he was denied a full and fair hearing, which includes a neutral and impartial arbiter of the merits of his claim and a reasonable opportunity to present evidence on his behalf." Abulashvili v. Att'y Gen., 663 F.3d 197, 207 (3d Cir. 2011) (internal quotation marks omitted). "The Due Process Clause does not allow a neutral hearing officer to become the functional equivalent of counsel for one of the parties . . . ." Id. at 208. Here, Clarke asserts that the IJ asked him more than 250 questions,

4

interrupted his testimony, and exhibited bias in favor of the Government. However, in light of the fact that Clarke appeared pro se at his removal hearing, we agree with the Board that the IJ's questions were necessary to develop the record and did not obstruct Clarke's ability to testify. See Abdulrahman v. Ashcroft, 330 F.3d 587, 596-97 (3d Cir. 2003). The record does not show that the IJ lacked courtesy or acted unprofessionally towards Clarke, see id. at 597, nor does it indicate that the IJ took over the Government's cross-examination for any purpose other than to clarify details for the record, cf. Abulashvili at 207-08. Clarke's due process claim is therefore meritless.

Clarke also claims that the IJ and Board applied an incorrect legal standard to his CAT claim. This, too, is a question of law over which we have jurisdiction. See Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 309-10 (3d Cir. 2011). To be eligible for CAT relief, an alien must show that it is more likely than not that he will be tortured if removed to the country in question. 8 C.F.R. § 1208.16(c)(2). "Torture" consists of the intentional infliction of "severe pain or suffering . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). An alien need not show that the government possesses actual knowledge of torturous conduct; rather, he can establish governmental acquiescence to torture by demonstrating that the government is willfully blind to the perpetrator's activities. Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 69 (3d Cir. 2007). Here, the Board assessed whether Clarke demonstrated "a clear probability of torture by or at the instigation of or with the consent or acquiescence of the Jamaican government (to include

the concept of willful blindness),'' and concluded that he had not. Because this standard is consistent with Silva-Rengifo, there is no merit to Clarke's claim that the IJ and Board applied an incorrect legal standard.

Clarke also asserts that the IJ and Board failed to address evidence of the Jamaican government's willful blindness. This issue is within our jurisdiction. See Huang, 620 F.3d at 388. While the Board ''must provide sufficient analysis to demonstrate that it has truly performed a full review of the record,''[3] id., the Board ''need not discuss every piece of evidence mentioned by an asylum applicant,'' see Green at 509. Here, the Board reviewed the record, including all documentation submitted by Clarke, and found that the Jamaican government has made efforts to protect retired police officers. On that basis, the Board concluded that Clarke had not demonstrated a clear probability of torture. This is therefore not a case where the Board can be said to have ignored Clarke's favorable evidence. See Green at 509.

However, to the extent that his third claim is, in substance, a challenge to the Board's weighing of the evidence and conclusion that the Jamaican government would not be willfully blind to his torture, those are factual issues that we lack jurisdiction to review. See id. at 507-08; Kaplun v. Att'y Gen., 602 F.3d 260, 271-72 (3d Cir. 2010).

---

[3] In Huang, this Court emphasized that the Board's review ''must reflect a meaningful consideration of the record as a whole'' when the Board reaches a different conclusion than the IJ. 620 F.3d at 387. That is not the case here, as the Board upheld the IJ's conclusion.

6

Finally, because Clarke failed to appeal to the Board the IJ's determination that he had been convicted of a particularly serious crime, he did not preserve that issue for our review.  See Lin v. Att'y Gen., 543 F.3d 114, 121 (3d Cir. 2008).

Accordingly, we will deny the petition for review.